**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
ANASTASIA STAPON

                          Plaintiff,

     v.

RIVERHEARD CENTRAL SCHOOL
DISTRICT, *et al.*

                    Defendants.
-----------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

2:19-cv-04708 (WFK) (LGD)

**LEE G. DUNST, Magistrate Judge:**

Plaintiff Anastasia Stapon seeks default judgment and other relief against Defendant

Charles Regan pursuant to Federal Rule of Civil Procedure Rule 55(b)(2). *See* Electronic Case

Filing ("ECF") No. 123. On October 3, 2025, Plaintiff requested a certificate of default against

Defendant (ECF No. 120), and the Clerk of Court entered default against him on October 6,

2025. *See* ECF. 123. On October 23, 2025, District Judge William F. Kuntz II conducted a

damages inquest hearing and referred the question of damages for which Defendant is liable to

the undersigned for a Report and Recommendation. *See* ECF Nos. 128, 129. For the following

reasons, the undersigned respectfully recommends that (1) Defendant be held liable for

$2,000,000 in compensatory and punitive damages, and (2) Plaintiff's request for attorneys' fees

and costs be denied.

I.    **BACKGROUND**

  A. **Factual Background**

At all relevant times, Plaintiff was an 18-year-old student at Riverhead High School,

located within Defendant Riverhead Central School District, and Defendant was the Principal of

Riverhead High School. *See* ECF No. 1 (hereinafter, the "Complaint" or "Compl.") ¶ 1, 53-54.

Plaintiff alleges that, beginning on or around January 8, 2019, and continuing until approximately April 30, 2019, Defendant misused his position to sexually harass, sexually seduce, assault, batter, and sexually abuse her. *Id.* ¶ 55. Over this four-month period in 2019, Defendant purportedly leveraged his position and authority as school principal to groom Plaintiff and take advantage of her personal struggles, which caused her to inappropriately rely upon him as her counselor and mentor. *Id.* ¶ 67-68(a–c). Among other offenses, Plaintiff alleges the following egregious offenses committed against her by Defendant:

- Defendant isolated Plaintiff from her parents, sister, romantic interests, school counselors, and teachers, so that Plaintiff would be overwhelmingly reliant on him. *Id.* ¶ 68(h);

- Defendant convinced Plaintiff that he would leave his wife and children in order to convince her to accept his sexual advances. *Id.* ¶ 68(j);

- Defendant would send Plaintiff messages threatening violence and death against other students who expressed what Defendant perceived to be romantic interest in Plaintiff. *Id.* ¶ 68(k);

- Defendant caused Plaintiff to give up her assigned school counselor and then assumed that responsibility himself. *Id.* ¶ 69(a);

- Defendant caused Plaintiff's sister, a special education student, to be moved from Riverhead High School to a separate special school with the intention to isolate Plaintiff. *Id.* ¶ 69(b); *see also* ECF No. 143 at 12;

- Using his school-issued cell phone, Defendant exchanged numerous sexually charged text messages, photos, and video calls with Plaintiff. *Id.* ¶ 69(f), 69(h);

- In April 2019, Defendant kissed Plaintiff's head without her consent. *Id.* ¶ 69(e);

- On or about April 29, 2019, Defendant persuaded Plaintiff to enter his office in order to sexually harass, sexually assault, batter, and sexually abuse Plaintiff. *Id.* ¶ 69(n). During the encounter, Defendant sexually battered Plaintiff by pulling her neck towards him, pressing his body against her, and forcibly kissing her on the mouth. *Id.* ¶ 69(p). After this encounter, Defendant texted Plaintiff inquiring about whether Plaintiff enjoyed and accepted the contact he forced. *Id.* ¶ 69(q); and

- Defendant forced Plaintiff into deleting texts messages and photographs to cover up his misconduct. *Id.* ¶ 69(s).

As a result, Plaintiff contends that she is severely traumatized and lives in fear of Defendant. *See* ECF No. 143 at 14. Plaintiff left school upon Defendant's misconduct being exposed, causing Plaintiff to finish the school year homeschooled. *Id.* at 21. She has experienced hallucinations and a sleep disorder, and has had multiple nervous breakdowns for which she was hospitalized. *Id.* at 12. Plaintiff has also turned to drugs and alcohol because she "felt like it was the only thing that could take the pain away . . ." *Id.* at 22. Although Plaintiff took a Reserve Officers Training Corps class in high school and was planning to join the military, Plaintiff alleges that she is unable to hold a job and pursue this career because of her trauma. *Id.* at 21–23. Because she lives in "constant fear" of retaliation, Plaintiff testified that she moved out of state, has to take medication for her daily nightmares and depression, and even attempted suicide "two or three" times and had to be hospitalized. *Id.* at 23, 25-26. Moreover, as a result of Defendant's conduct, Plaintiff has profound distrust around men and becomes uncomfortable being alone with them, even briefly. *Id.* at 34.

### B. Procedural Background

Plaintiff filed this action on August 15, 2019. *See* ECF No. 1. Defendant originally was represented by counsel, but his counsel was relieved on March 20, 2020. *See* Feb. 27, 2020 Order, March 20, 2020 Order; ECF Nos. 35, 36. Following a premotion conference before Judge Kuntz on January 23, 2020, Defendants — excluding Defendant Regan — filed a motion to dismiss Plaintiff's complaint. *See* ECF Nos. 38-40.  In a decision on April 5, 2021, Judge Kuntz granted the motion in part, and denied the motion in part, but importantly, ordered that "[t]he remaining state claims and all claims against Defendant Regan remain in the action." ECF No. 48. While the other Defendants answered the Complaint's remaining allegations (ECF No. 49), Defendant failed to file an answer. As discussed during the Initial Conference before Magistrate Judge Steven Tiscione[1] on May 11, 2021, "[p]ro se Defendant Regan did not appear for the conference and has had no contact with the Court or the attorneys in this case in more than a year. Further, Mr. Regan has never updated the Court with his contact information, and the docket therefore has no address or other means by which the Court or parties may contact Mr. Regan other than the address that appears on the affidavit of service [ . . . ]". ECF No. 55. The Court then ordered Defendant to appear at the telephone conference on June 11, 2021. *See id.*

Regan in fact, did appear at the conference. *See* DE 58. Judge Tiscione "warned that he must answer the Complaint and [crossclaim] no later than July 16, 2021, or he will be found to be in default and a judgment may [be] issue[d] against him." *See id.*  Defendant, however, once again failed to comply.

Defendants – excluding Defendant Regan – later filed for summary judgment (ECF Nos. 86-89). On September 15, 2025, Judge Kuntz first granted the motion in part and reserved in

---

[1] This case was reassigned to the undersigned on June 14, 2022. *See* June 14, 2022 Order.

part. *See* ECF No. 108. Then, following a supplemental submission by Defendants (*see* ECF Nos. 109, 116), Judge Kuntz granted Defendants' motion for summary judgment in full. *See* ECF No. 119. In his Order, Judge Kuntz also noted that, "[t]he claims against Defendant Regan remain, as he did not join in the District Defendants' motion." *See id.* These federal and New York state law claims against Regan include the following: (1) sexual assault (*see* ECF No. 1 ¶ 72), (2) sexual battery (*id.* ¶ 75), (3) sexual abuse (*id.* ¶ 78), (4) sexual harassment (*id.* ¶ 81), (5) violation of Title IX (*id.* ¶ 84), (6) civil rights violation under 42 U.S.C. § 1983 (*id.* ¶ 94), (7) intentional infliction of emotional distress (*id.* ¶ 99), (8) prima facie tort (*id.* ¶ 102), (9) breach of fiduciary duties (*id.* ¶ 105), (10) counseling and psychological malfeasance (*id.* ¶ 110), (11) fraud (*id.* ¶ 120), (12) fraud in the inducement (*id.* ¶ 127), (13) grossly negligent supervision (*id.* ¶ 133), and (14) negligent hiring and retention (*id.* ¶ 138).

On October 3, 2025, Plaintiff requested a certificate of default against Regan (ECF No. 120), and the Clerk of Court entered default against him on October 6, 2025. *See* ECF No. 123. On October 23, 2025, Judge Kuntz held an inquest to determine the amount of damages for which Defendant is liable and heard testimony from Plaintiff and her fiancé, as well as argument by Plaintiff's counsel. *See* ECF No. 127. During that inquest, Judge Kuntz orally entered default against the Defendant. *See* ECF No. 143 at 18 ("in terms of establishing the liability, you've won that"), 27 ("this Court has entered a default judgment against him in its entirety"), 37 ("the default judgment has already been entered against Regan"). Judge Kuntz then referred the question of damages to the undersigned for a Report and Recommendation based on Plaintiff's submissions and the inquest hearing before Judge Kuntz.[2] *See id; see also* ECF No. 128.

---

[2] Since the hearing on October 23, 2025, Plaintiff has filed multiple submissions to the undersigned in further support of her damages request, including the most recent on February 20, 2026. *See* ECF Nos. 136, 137, 138, 140, 141, 142.

## II. LEGAL STANDARD

The Clerk of the Court entered a certificate of default against Defendant pursuant to Fed. R. Civ. P. 5 (*see* ECF No. 123), and Judge Kuntz orally entered default against the Defendant at the October 23, 2025 hearing. *See* ECF No. 143 at 18, 27, 37. "While a defendant's liability is confirmed by an entry of default, the plaintiff's entitlement to damages is not established automatically." *Doe v. Gonzalez*, No. 21-CV-04580 (JS) (LGD), 2023 WL 5979182, at *5 (E.D.N.Y. Aug. 4, 2023), *report and recommendation adopted in part, rejected in part*, No. 21-CV-4580(JS)(LGD), 2023 WL 6211023 (E.D.N.Y. Sept. 25, 2023) (citation omitted); *see also Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 90 (E.D.N.Y. 2020) (explaining that although allegations are deemed true upon a party's default, allegations of damages are not); *A&B Alternative Mktg. Inc. v. Int'l Quality Fruit Inc.*, 521 F. Supp. 3d 170, 176 (E.D.N.Y. 2021), *aff'd*, 35 F.4th 913 (2d Cir. 2022) (explaining that "a defendant's default does not constitute an admission as to the damages claimed in the complaint") (citation omitted).

When awarding damages after an entry of default, the court must be able to ascertain damages with "reasonable certainty." *Doe v. Green,* No. 17CV1765RAOTW, 2021 WL 2188534 at *4 (S.D.N.Y. Apr. 29, 2021)*, report and recommendation adopted,* No. 17-CV-1765 (RA), 2021 WL 2188148 (S.D.N.Y. May 28, 2021) (quotation omitted). The plaintiff bears the burden of establishing their entitlement to damages and can do so in the form of "evidence presented at a hearing, or upon review of detailed affidavits and documentary evidence." *Id.*; *see* Fed. R. Civ. P. 55(b)(2)(B); *see also Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr. LLC*, 779 F.3d 182, 189 (2d Cir. 2015) (assessing plaintiffs' briefs, audits and affidavits to determine damages); *see also Antoine*, 489 F. Supp. 3d at 78 (holding an inquest to determine damages in a sexual assault case in default). In situations where damages are "not susceptible to

simple mathematical calculation," the court has discretion in determining the weight it affords the evidence presented by the plaintiff. *See Antoine*, 489 F. Supp. 3d at 91; *see also Gonzalez,* 2023 WL 5979182, at *5.

Here, in support of Plaintiff's claim for damages against Defendant, Judge Kuntz held an inquest conference to determine damages. *See* ECF No. 129. At the hearing, Plaintiff's counsel discussed the severe psychological treatment and trauma Plaintiff experienced following Defendant's alleged offenses. *See* ECF No. 143 at 22–23. Plaintiff also submitted a packet of evidence comprised of medical bills and records evidencing psychiatric evaluations, hospitalizations, pharmaceutical records, and related insurance claim details. *See* Jan. 28, 2026 Order, ECF No. 140. The transcript of the inquest hearing referenced an affidavit by Plaintiff, which this undersigned and received on February, 20, 2026. ECF No. 143 at 7. In her affidavit, Plaintiff confirmed the effect of the alleged trauma on her daily life. *See* ECF No. 141. The Court takes all these materials, as well as Plaintiff's supplemental submissions, into consideration to determine damages herein.

## III.   <u>DISCUSSION</u>

As clarified in Plaintiff's supplemental letter on damages (*see* ECF No. 138), Plaintiff seeks the following damages: (1) compensatory damages in the amount of $3.4 million, (2) punitive damages in the amount of $10.2 million, (3) and attorney's fees and costs. For the foregoing reasons, the undersigned recommends an award of damages but in reduced amounts of $1,000,000 in compensatory damages and $1,000,000 in punitive damages, as well as declining to grant attorney's fees.

**A. <u>Compensatory Damages</u>[3]**

Plaintiff requests two categories of compensatory damages against Defendant: first, $900,000 for six years of past pain and suffering, mental anguish, and loss of opportunity due to Defendant's alleged abuse (*See* ECF No. 138), and next, $2,500,000 for future pain and suffering and loss of opportunities for fifteen years. *See id*. As discussed below, the Court finds that such damages are warranted, but at reduced levels based on the record before it.

**i.       Damages for Past Pain and Suffering**

Compensatory damages may be recoverable in claims involving sexual assault, battery, and intentional infliction of emotional distress. *See Offei v. Omar*, No. 11 CIV. 4283 SAS MHD, 2012 WL 2086294, at *5 (S.D.N.Y. May 18, 2012), *report and recommendation adopted*, No. 11 CIV. 4283 SAS, 2012 WL 2086356 (S.D.N.Y. June 8, 2012). This includes "compensation for the injury itself, conscious pain and suffering including mental and emotional anxiety which can be based on the plaintiff's subjective testimony, plus special damages, which need not be pleaded." *Id.* (citing *Deborah S. v Diorio*, 583 N.Y.S.2d 872, 878 (Civ. Ct. 1992)). The Supreme Court has long held that the crime of sexual assault is inherently violent in nature and, even if not accompanied by violence, may inflict serious psychological damage on the victim. *See id.* (citing

---

[3] Plaintiff's primary federal claim against Defendant is an alleged Title IX violation. *See* ECF No. 1 ¶ 84. Title IX is considered a "spending statute," similar to Title VI of the Civil Rights Act of 1964, the Rehabilitation Act, and the Affordable Care Act. *See* 20 U.S.C. § 1681 et seq.; *see also Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 218 (2022). In 2022, the Supreme Court held "that emotional distress damages are not recoverable under the Spending Clause antidiscrimination statutes." *Cummings*, 596 U.S. at 230. Thus, Plaintiff is barred from recovering emotional distress damages under that cause of action. *Doherty v. Bice*, 101 F.4th 169, 174 (2024). However, in a default judgment stage, because the Court accepts as true the liability of Defendant on all claims, including the state law claims, the Court in its discretion chooses to assess emotional distress damages on those state law claims. *See* 28 U.S.C. § 1367(a); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

*Coker v. Ga.*, 433 U.S. 584, 597-98 (1977)) (finding that plaintiff suffered "serious adverse effects" from an incident of sexual assault that did not involve).

District courts in the Second Circuit have granted significant compensatory damages awards for sexual assault victims which have varied drastically from case to case. *See, e.g., Green*, 2021 WL 2188534, at *4 (citing *Mathie v. Fries*, 935 F. Supp. 1284, 1305 (E.D.N.Y. 1996), *aff'd in part and remanded in part*, 121 F.3d 808 (2d Cir. 1997) (holding that "the law does not provide a precise formula by which pain and suffering and emotional distress may be properly measured and reduced to monetary value[,] . . . [the] Court is assisted in this endeavor by reviewing the precedents."). While reviewing other cases can provide the Court with an "objective frame of reference," the Court is not constrained by prior damage awards and can take into its own assessment the individual circumstances of a plaintiff. *See id.* (citations omitted).

When the evidence supports such a finding, sexual assault cases in this Circuit frequently trigger compensatory damages awards in the low-to-mid hundreds of thousands of dollars. *See Offei*, 2012 WL 2086294, at *5 (awarding $250,000 in compensatory damages for sexual assault case); *see e.g.*, *Cash v. Cnty. of Erie*, 2009 WL 3199558, at *1, *3 (W.D.N.Y. Sept. 30, 2009) (awarding $500,000 in compensatory damages for rape of inmate by corrections officer); *Walker v. Dickerman*, 993 F. Supp. 101, 102, 106 (D. Conn. 1997) (awarding over $750,000 in compensatory damages to plaintiff for long-term sexual abuse of her by her minister while she was an adolescent); *see also Town of Hempstead v. Div. of Human Rights*, 233 A.D.2d 451, 454–57 (2d Dep't 1996) (holding that awards of $200,000 to $500,000 were appropriate for repeated lewd acts by employees' supervisor, including self-exposure, forced kissing, grabbing of breasts, rubbing and objectionable comments); *Deborah S.*, 583 N.Y.S.2d at 878 (awarding $100,000 in emotional-distress damages for one instance of "date rape"). .

Here, the Court evaluates the following evidence to determine damages for Plaintiff's past pain and suffering: (1) Plaintiff's medical records; (2) the testimony of Plaintiff and Plaintiff's partner (as well as the argument by her counsel) at the inquest before Judge Kuntz; and (3) Plaintiff's affidavit.

### a) Plaintiff's Medical Records

Corroborating testimony or medical evidence is often introduced to substantiate a plaintiff's own account of their emotional distress. *See Marchisotto v. City of New York*, No. 05-cv-2699, 2007 WL 1098678, at *10 (S.D.N.Y. Apr. 11, 2007). While helpful, such expert testimony or medical evidence in support of a plaintiff's emotional distress is not required to sustain an award of damages. *See Pizarro v. Quezada*, No. 24-2422, 2025 WL 2865251, at *3 (2d Cir. Oct. 9, 2025) (summary order); *see, e.g. Meacham v. Knolls Atomic Power Lab.*, 381 F. 3d 56, 77 (2d Cir. 2004) (sustaining an award for "subjective distress" where plaintiffs "offered no proof other than testimony establishing shock, nightmares, sleeplessness, humiliation"), *vacated on other grounds sub nom.*, *KAPL, Inc. v. Meacham*, 544 U.S. 957 (2005).

Here, Plaintiff submitted a composite exhibit of medical records into evidence in conjunction with the inquest hearing before Judge Kuntz. *See* ECF No. 129. These medical records consist of insurance claims, psychiatric evaluations, pharmacy records, and hospital discharge instructions. Plaintiff later submitted an index accompanying the composite medical records exhibit from the inquest hearing, listing each page with a brief description and corresponding dollar amount. *See generally* ECF No. 140. Plaintiff's index concludes with a claim of "[more than] $300,000" in medical expenses. *See id.* at 12. The Court, however, is unable to discern how the Plaintiff reached that number from the amounts listed in the index. Notwithstanding this, the existence of ample medical records is still helpful to the Court in its

10

inquiry to determine damages (*see Marchisotto*, 2007 WL 1098678, at *10), but not determinative of an exact dollar amount. The Court therefore moves on to Plaintiff's own testimony and affidavit.

### b) Testimony at the Inquest and Plaintiff's Affidavit

The Second Circuit has routinely sustained emotional distress awards based solely on a plaintiff's testimony. *See, e.g. Patterson v. Balsamico,* 440 F.3d 104, 120 (2d Cir. 2006) (sustaining an award where the only evidence of harm was the plaintiff's own "testimony of his humiliation, embarrassment, and loss of self-confidence, as well as testimony relating to his sleeplessness, headaches, stomach pains, and burning in his eyes from the use of mace in the attack"); *see also Cross v. New York City Transit Auth.*, 417 F.3d 241, 258 (2d Cir. 2005) (maintaining emotional distress damages award where plaintiff testified to his depression, anxiety and shame).

Here, Plaintiff testified that she had experienced depression, anxiety, nervous breakdowns, weight loss associated with eating disorders, frequent nightmares, and a persistent fear that Defendant will kill her fiancé. *See* ECF No. 143 at 23–25. Plaintiff left school and ultimately relocated to an out-of-state mental health facility due to her fear of Plaintiff's retaliation. *Id*. at 23. Plaintiff's testimony presented at the inquest hearing is similar to that in *Antoine*, where the plaintiff reported multiple mental-health conditions, weight loss, frequent nightmares, leaving her job, and relocating to a shelter out of fear of retaliation in a sexual assault case. *See Antoine*, 489 F. Supp. 3d at 98; *see also Doe v. Hyassat*, No. 18-CV-6110 (PGG) (OTW), 2024 WL 2862547, at *2 (S.D.N.Y. Apr. 11, 2024), *report and recommendation adopted*, No. 18CIV6110PGGOTW, 2024 WL 1955354 (S.D.N.Y. May 3, 2024) (noting another instance in which a plaintiff testified to "depression, post-traumatic stress disorder, anxiety, and suicidal

ideation", as well as "recurring nightmares of being attacked by men" at an inquest hearing). Plaintiff also testified that she attempted suicide multiple times and continues to have mental health issues "almost every day." *See* ECF No. 143 at 25. During the inquest hearing, Plaintiff submitted an affidavit in support of damages. *See* ECF No. 143 at 7; ECF No. 141. In it, she corroborates her testimony and medical records, recounting her trauma and subsequent mental health concerns. *See generally* ECF No. 141.

Between the medical records, affidavit, and testimony at the inquest hearing, this Court finds that Plaintiff has provided adequate evidence in support of her past pain and suffering to justify an award of emotional distress damages. Upon review of the aforementioned evidence, and consideration of emotional distress damages awards in comparable cases discussed *supra*, the undersigned recommends a total of $500,000 in compensatory damages for Plaintiff's past pain and suffering.

### ii. Damages for Future Pain and Suffering

In a letter in support of damages following the inquest, Plaintiff requested damages "for future medical care, continued" and "continued psychological treatment." ECF No. 138. When seeking economic compensatory damages for future medical and psychological treatment, such damages must be "reasonably certain to be incurred and necessitated by plaintiff's injuries." *Rivera v. Home Depot USA, Inc.*, 776 F. App'x 4, 7 (2d Cir. 2019) (quoting *Schultz v. Harrison Radiator Div. Gen. Motors Corp.*, 90 N.Y.2d 311, 321 (1997)) (upholding a future damage award based on an expert report that included line-by-line estimates of what the plaintiff would need going forward based on review of the plaintiff's medical records). "The award must be 'supported by competent evidence,' that is not 'purely speculative' which 'establishes the need for, and the cost of, medical care.' *Sarhadi v. Geever*, No. 1:24-CV-31 (BKS/PJE), 2025 WL

2050930, at *7 (N.D.N.Y. July 22, 2025) (quoting *Abedin v. Osorio*, 216 A.D. 3d 708, 709–10 (2d Dep't 2023)). For example, the plaintiff in *Sarhadi* submitted an evaluation by a clinical psychologist which recommended numerous treatments and provided costs for those treatments. 2025 WL 2050930, at *8.

The district court decision in *Doe v. HRH Prince Abdulaziz Bin Fahd Alsaud, Saudi Oger Ltd.*, No. 13 CIV. 571, 2017 WL 4541426, at *6 (S.D.N.Y. Oct. 10, 2017), is similarly informative. There, the court awarded plaintiff $400,000 for future pain and suffering, plus $850,000 for past pain and suffering, because the plaintiff's "psychological and emotional symptoms have persisted seven years since the date of the attack." *Id*. at *6. The court noted that plaintiff's emotional trauma was evidenced by "her attempted suicide, inability to maintain full time work since the attack, [and] loss of self-esteem, autonomy, self-dignity, and self-respect, in addition to her lack of faith in herself and the world." *Id*. at *6; *see also Noonan v. Becker*, No. 14-CV-4084 (LTS) (JLC), 2018 WL 1738746, at *7 (S.D.N.Y. Apr. 10, 2018), *report and recommendation adopted*, No. 14 CV 4084-LTS-JLC, 2018 WL 2088279 (S.D.N.Y. May 3, 2018) (awarding $1,000,000 where the plaintiff experienced depression, anxiety, paranoia around men, and was unable to focus on work); *Hyassat*, 2024 WL 2862547, at *5 (awarding $1,250,000 in compensatory damages where the plaintiff experienced depression, post-traumatic stress disorder, anxiety, suicidal ideation, and deterioration of ambition and work ethic).

Plaintiff here has experienced depression, anxiety, and paranoia around men, as evidenced through her testimony, affidavit, and medical records. *See* ECF No. 143 at 25–26, 35. Moreover, she struggles to maintain work due to her trauma. *See id.* at 21–23. Finally, as in *HRH Prince Abdulaziz*, Plaintiff's trauma has persisted for several years. *See* ECF No. 141 at 1 (describing that as recently as October 2025, Plaintiff affirmed that "I am not recovered from the

harm he [has] done."). Thus, upon review of the record and comparable cases, the undersigned recommends a total of $500,000 in compensatory damages for Plaintiff's future pain and suffering.

### B. <u>Punitive Damages</u>

Plaintiff requests punitive damages in an amount three times the award of compensatory damages. *See* ECF No. 142. Courts will award punitive damages under New York law where "the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him." *Walker v. Sheldon*, 10 N.Y.2d 401, 404 (1961). The Supreme Court considers three factors in evaluating a punitive damages award: (1) the degree of reprehensibility of the defendant's conduct, (2) the ratio of punitive damages to compensatory damages, and (3) the difference between the award and the penalties authorized or imposed in comparable cases. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996); *see also Mathie,* 121 F.3d at 816. Courts in the Second Circuit consider similar factors. See *Offei*, 2012 WL 2086294, at *7 (considering defendant's motive; the existence or absence of malice or intentional disregard for plaintiff's rights or reckless indifference thereto; the nature, quality and duration of harm inflicted upon plaintiff; defendant's financial wealth or assets; and the degree of deterrent resulting from a punitive award when determining the amount of punitive damages to award a plaintiff). Moreover, punitive damages are considered appropriate mechanisms for general deterrence. *See Offei*, No. 11 CIV. 2012 WL 2086294, at *7 (citing *Hartford Acc. & Indem. Co. v. Vill. of Hempstead,* 48 N.Y.2d 218, 225 (1979)).

Determining a figure for punitive damages can be "a somewhat arbitrary exercise." *See Offei*, 2012 WL 2086294, at *7. In a sexual assault, battery, and intentional infliction of emotional distress case in the Southern District of New York that, like here, did not involve

allegations of penetration, the Court awarded punitive damages of $100,000 and compensatory damages of $250,000. *See id.* However, in other sexual assault cases in which the victim has suffered "life-long ramifications," courts have awarded in excess of $1 million in punitive damages. *See Hyassat*, 2024 WL 2862547, at *5 (awarding $1,250,000 in punitive damages where defendant drugged and raped plaintiff); *Noonan,* 2018 WL 1738746, at *8 (awarding $1,000,000 in punitive damages where defendant "shattered [plaintiff's] emotional well-being). Courts in the Second Circuit also have "frequently award punitive damages that are equal to or less than" the amount awarded for compensatory damages. *Antoine*, 489 F. Supp. 3d at 101; *see Hyassat*, 2024 WL 2862547, at *5 (explaining a "one-to-one ratio of punitive damages to compensatory damages is both common and permissible when compensatory damages are 'substantial.'"). When a plaintiff is requesting punitive damages in excess of the common one-to-one ratio of punitive damages to compensatory damages, it is crucial to note that "large punitive damages awards . . . implicate constitutional due process principles." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 164 (2d Cir. 2014) (citing *Honda Motor Co. v. Oberg*, 512 U.S. 415, 420 (1994)).

Here, the Court finds that an award of punitive damages is warranted in this case, as Defendant's conduct is particularly reprehensible. As a public school principal, Regan took physical and emotional advantage of a student, and his conduct "was directed at someone whom he undoubtedly perceived as vulnerable and hence perhaps compliant to his wishes or at least fearful of complaining." *Offei*, 2012 WL 2086294, at *7. As in comparable cases, the Court finds a one-to-one ratio of compensatory damages and punitive damages appropriate. *See, e.g., Antoine*, 489 F. Supp. 3d at 101; *Hyassat*, 2024 WL 2862547, at *5. By Defendant's default, he has "surrendered the opportunity to demonstrate that his financial circumstances should constrain

the amount of any such award." *See Offei*, 2012 WL 2086294, at *8 (citing *Mathie*, 121 F.3d at 816) ("Under well established precedent in this Circuit, 'it is the defendant's burden to show that his financial circumstances warrant a limitation of the award.'") (citation omitted)). Thus, the undersigned therefore recommends a total amount of $1,000,000 in punitive damages.

## C. <u>Attorney's Fees</u>

In conjunction with the application for default judgment against Defendant, Plaintiff's counsel has requested an award of attorneys' fees. *See* ECF No. 142, ECF No. 143 at 17.

Courts in the Second Circuit are guided in attorneys' fees applications by "(1) rates awarded in prior cases; (2) the court's own knowledge of prevailing rates in the district; and (3) evidence submitted by the parties." *Santillan v. Henao*, 822 F. Supp. 2d at 300 (citing *Farbotko v. Clinton Cnty.*, 433 F.3d 204, 209 (2d Cir. 2005)). Courts look to determine a "presumptively reasonable fee" by "multiplying the number of hours reasonably expended on litigation by an hourly rate that a reasonable, paying client would be willing to pay." *Gonzalez* 2023 WL 5979182, at *9 (quoting *Astudillo v. Fusion Juice Bar Inc.*, No. 19CV2590EKCLP, 2023 WL 3802754, at *15). To determine what a reasonable client would pay, courts consider the community in which the district court sits, coupled with the prevailing rates for attorneys in that field with comparable experience. *See id.*; *see also Estrella v. P.R. Painting Corp.*, 596 F. Supp. 2d 723, 725 (E.D.N.Y. 2009); *Arbor Hill Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d at 190).

It is Plaintiffs' burden to offer evidence to the court why its requested fee is appropriate. *See, e.g., LV v. N.Y. City Dep't of Educ.*, 700 F. Supp. 2d 510, 521 (S.D.N.Y. 2010). This required evidence consists of detailed invoices that show the exact amount of time spent on litigation, along with the fee that each attorney working on the case charges. *See, e.g., Gonzalez* 2023 WL

5979182, at *9; *see also New York State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983) (explaining that attorneys who apply for attorney's fees in the Second Circuit "must document the application with contemporaneous time records . . . [t]hese records should specify, for each attorney, the date, the hours expended, and the nature of the work done"). Plaintiff's attorneys must also provide the same information for paralegals working on the case. *See id*.

Here, Plaintiff's counsel has not met his burden to establish an award of attorney's fees. This Court has given Plaintiff's counsel multiple opportunities across the course of this motion practice to submit supporting evidence justifying and specifying Plaintiff's request for damages and attorneys' fees. *See, e.g.,* Oct. 24, 2025 Order (directing Plaintiff to submit "the legal and factual bases for the requested damages" noting that "[t]he party seeking to recover costs bears the burden of adequately documenting and itemizing the costs requested"); Dec. 8, 2025 Order (in ordering supplemental submissions, reminding Plaintiff's counsel that it is "**Plaintiff's burden** to prove damages") (emphasis in original); Jan. 28, 2026 Order (directing Plaintiff's counsel to submit an index that he referenced in prior filings but failed to provide to the Court); Feb. 4, 2026 Order (directing Plaintiff's counsel to submit a missing exhibit). Despite this, he has failed to submit any evidence in support of the requested attorney's fees.  In no submission did Plaintiff's counsel file any supporting documentation, including neither invoices nor affidavits, to justify his requests for fees or costs. Moreover, at the inquest with Judge Kuntz, Plaintiff's counsel stated that his request was for $350,000 in fees (ECF No. 143 at 17), but in a supplemental letter to the Court, vaguely requested "fees exceeding $100,000." ECF No. 142. Therefore, Plaintiff has not met her burden, and this Court denies an award of attorney's fees and costs.

**IV.**     <u>**CONCLUSION**</u>

For the foregoing reasons, the undersigned recommends that Judge Kuntz award damages to Plaintiff against Defendant Regan as follows: (1) $1,000,000 in compensatory damages, and (2) $1,000,000 in punitive damages. The undersigned also recommends the denial of an award for attorney's fees and costs.

**V.**     <u>**OBJECTIONS TO THIS REPORT AND RECOMMENDATION**</u>

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any request for extension of time for filing objections must be directed to Judge Kuntz. FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND LATER APPEAL TO THE UNITED STATES COURT OF APPEALS. *See Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3D 566, 569 (2d Cir. 1995).

**SO ORDERED**:

Dated: Central Islip, New York     */s/ Lee G. Dunst*
       May 1, 2026          _____
                                          **LEE G. DUNST**
                                          United States Magistrate Judge